# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GERARD JACKSON on behalf of himself and others similarly situated,<br><br>Petitioner<br><br>v.<br><br>ARAGON ADVERTISING, LLC<br><br>Respondent. | Case No. |

## GERARD JACKSON'S MOTION TO COMPEL
## ARAGAON ADVERTISING, LLC TO RESPOND TO SUBPOENA

This is a straightforward discovery dispute. The plaintiff Gerard Jackson ("Mr. Jackson" or "Plaintiff") is litigating a consumer class action against Clear Link Insurance Agency, LLC ("Clear Link") *Gerard Jackson v. Clear Link Insurance Agency, LLC, et. al.,* Civil Action No. 22-CV-01466 pending in the Middle District of Pennsylvania (the "Underlying Action"). The Underlying Action rests on a straightforward claim: Mr. Jackson alleges that Clear Link, through its various telemarketing vendors, sent him and other putative class members telemarketing calls when their telephone numbers were listed on the National Do Not Call Registry. That conduct violates the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. 227, and has statutory damages available to consumers of up to $1,500 per violation. The putative class definition in the Underlying Action is below:

> **National Do Not Call Registry Class.** All persons in the United States whose (1) residential telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of Defendants (3) within a 12-month period (4) from the four years prior to the filing of the complaint through the date of trial.

*See* Exhibit 1, Class Action Complaint at ¶ 54. The Court has Ordered that the parties complete all discovery for class certification and trial in a single discovery period.

Since Clear Link utilized third parties to make the calls, Mr. Jackson has been left to issue a series of third-party subpoenas to entities that made the calls to putative class members. One of those entities, Digital Media Solutions, LLC, is already a defendant in the case because they called Mr. Jackson directly. One entity, What if Holdings, LLC, has already produced their calling data. Another entity, Fluent, LLC, has agreed to produce their calling data and related documents and are in the process of doing so. The subpoena that was issued to Aragon Advertising is attached as Exhibit 2.

However, Aragon Advertising has objected to producing any documents. Their basis for doing so? While they do not deny that they made telemarketing calls for Clear Link, they actually settled a lawsuit with Mr. Jackson on May 12, 2022 related to allegations that they violated the TCPA when they called him on behalf of Clear Link. While the Plaintiff did not concede that such an action would prevent him from pursuing Clear Link for those calls, the Plaintiff did agree to limit any production during the meet and confer process under his subpoena to calls made after May 12, 2022. As such, the calling data would be limited to calls made between May 13, 2022 through approximately September 2022, when Clear Link terminated them based on the fact that they were getting complaints that Aragon was violating the TCPA when calling on their behalf. However, even with this limitation, Aragon Advertising has refused to produce responsive data.

The Plaintiff is out of options, and with nowhere else to get this data, must file this motion to compel, and as there is only a single discovery period to obtain this information, he must get that information now.

## I. BACKGROUND

The TCPA strictly regulates telemarketing to consumers via telemarketing calls to phones that are listed on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c). The TCPA provides for statutory damages of $500 for a negligent violation and $1,500 where the violation at issue was "knowing or willful." *See* 47 U.S.C. § 227(c). Mr. Jackson's lawsuit alleges that Clear Link's telemarketing involved third parties that made calls to numbers on the National Do Not Call Registry and is seeking to represent the following class:

> **National Do Not Call Registry Class.** All persons in the United States whose (1) residential telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of Defendants (3) within a 12-month period (4) from the four years prior to the filing of the complaint through the date of trial.

After discovery commenced, Clear Link provided initial disclosures that identified the third parties it used to make telemarketing calls during the putative class period. *See* Exhibit 3, Clear Link's First Supplemental Disclosures. As described above, the Plaintiff has been pursuing third parties via subpoenas with this calling data, and while other third parties are in the process of gathering information from the individuals that made telemarketing calls for Clear Link or have otherwise provided it, Aragon Advertising has refused to do so, despite the fact that Clear Link actually terminated their relationship around September of 2022 for allegedly violating the TCPA by making telemarketing calls to individuals on the National Do Not Call Registry and despite the fact that the Plaintiff offered to limit the subpoena response to address their single objection.

## II. ARGUMENT

**A. The Plaintiff has Requested Relevant Information that Must be Obtained Now and Even Narrowed the Information Sought During the Meet and Confer Process based on Aragon Advertising's Single Objection.**

In order for a plaintiff to compel information from a third party under Fed. R. Civ. P. 45,

they must seek information that is relevant. *See Culbreath v. Griffin*, No. 17-CV-3406 (KMK) (LMS), 2018 U.S. Dist. LEXIS 242824, 2018 WL 11299396, at *3 (S.D.N.Y. Mar. 1, 2018) (discussing two-step analytical framework governing motions to compel, including (1) the movant's burden to show relevance and, if met, (2) the resisting party's burden to show undue expense or burden). "Information is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Relevance is a matter of degree, and the standard is applied more liberally in discovery than it is at trial." *Cuomo v. N.Y. State Assembly Judiciary Comm.,* No. 22-MC-3027 (LDH) (TAM), 2023 U.S. Dist. LEXIS 126153, at *36-37 (E.D.N.Y. July 21, 2023).

Requesting a list of persons that were the recipients of telemarketing calls is a standard practice in TCPA class litigation. "[A] list of phone numbers may very well bear direct relevance to a violation of the TCPA concerning the dialing of the very phone numbers listed." *Knutson v. Schwan's Home Serv., Inc.*, 2013 WL 3746118, at *4 (S.D. Cal. July 15, 2013) (ordering the production of a "dial list" consisting of everyone in the plaintiff's proposed class). Such information is relevant because it speaks to issues upon which a district court must pass in deciding whether a suit should proceed as a class action under Rule 23, such as numerosity, ascertainability, commonality, and predominance. For these reasons, production of call lists are routinely ordered in courts across the country. *See, e.g., Warren v. Credit Pros Int'l Corp.,* No. 3:20-cv-763-TJC-MCR, 2021 U.S. Dist. LEXIS 79150, at *21 (M.D. Fla. Apr. 26, 2021) ("Plaintiff is also entitled to receive—prior to class certification—the documents and information related to the call logs, transmission summaries, outbound call lists, and the information contained therein bearing on Defendant's communications with the putative class members, because Defendant has not moved to bifurcate class and

merits discovery and such information is relevant both to the merits of Plaintiff's claims and to the numerosity and commonality requirements in Rule 23, Fed.R.Civ.P."); *O'Shea v. Am. Solar Sol., Inc.,* No. 14CV894-L (RBB), 2016 WL 701215 (S.D. Cal. Feb. 18, 2016) (granting plaintiff's request for outbound dial list because the "information is relevant to both class certification and to the merits of the case"); *Cahill v. GC Servs. Ltd. P'ship*, No. 317CV01308GPCMDD, 2018 WL 1791910, at *4 (S.D. Cal. Apr. 16, 2018) (compelling production of call list);  *Gossett v. CMRE Fin. Servs.,* Case No. 15cv803 MMA (NLS), 2015 WL 6736883, at *3 (S.D. Cal. Oct. 30, 2015) (granting a motion to compel responses to requests for production of outbound call lists, as such lists were "relevant to the class claims and meritorious claims and defenses in this case"); *see also, e.g.*, *Martin v. Bureau of Collection Recovery*, No. 10 C 7725, 2011 U.S. Dist. LEXIS 157579 at *8-*12 (N.D. Ill. June 13, 2011) (granting plaintiffs' requests for a call list); *Donnelly v. NCO Fin. Sys., Inc.,* 263 F.R.D. 500, 503-504 (N.D. Ill. 2009) (Nolan, J.) (granting plaintiffs' request for defendant's call logs); *Whiteamire Clinic, P.A. v. Quill Corp.*, 2013 WL 5348377, at *2 (N.D. Ill. 2013) (granting plaintiff's request for call list; "the information plaintiff seeks…is clearly relevant to class discovery; specifically to the issues of numerosity, commonality, and typicality").[1]

The Plaintiff's subpoena to Aragon Advertising seeks that information.:

**Request No. 1:** All documents reflecting any call (including attempted call) or text message made by you or any call center vendor of yours for the Defendant, or to generate leads for Defendant (even if Defendant was not the exclusive buyer or beneficiary of said leads), or

---

[1] *See also Mbazomo v. ETourandTravel, Inc*., No. 2:16-CV-02229-SB, 2017 WL 2346981, at *5 (E.D. Cal. May 30, 2017) (call logs and dialing lists relevant to numerosity and commonality); *Ossola*, 2015 WL 5158712, at *7 ("Call data is relevant, and thus produced as standard practice . . . in cases where the defendant is the alleged dialer."); *Gossett v. CMRE Fin. Servs.*, 142 F. Supp. 3d 1083, 1087 (S.D. Cal. 2015) (same); *Thrasher v CMRE Financial Services, Inc.*, 2015 U.S. Dist. LEXIS 34965 (S.D. Cal. March 13, 2015) (same); *Gusman v. Comcast Corp.*, 298 F.R.D. 592 (S.D. Cal. 2014) (same); *Webb v. Healthcare Revenue Recovery Grp. LLC*, 2014 WL 325132, at *2-3 (N.D. Cal. Jan. 29, 2014) (same).

that could have generated a lead for the Defendant, since January 1, 2019. A complete answer will include at least the following:

> a. Information for the person you were trying to reach (e.g., name, business name, address, email, phone number).
> b. Information for the calls themselves, including the phone number called, the date and time of the call and the result of the call (e.g., no answer, message left, spoke with John Doe and updated business data, etc.)
> c. Any documents showing the prior express consent of the called party to be called.

*See* Exhibit 2. Despite the fact that Aragon failed to respond by the deadline in the subpoena, the parties met and conferred on Aragon Advertising's subpoena response on September 12, 2023. Aragon Advertising lodged a single objection to the subpoena:

> Aragon objects to this request on the ground that it is overbroad and in direct contravention of a settlement agreement and release entered with Plaintiff with an effective date of May 12, 2022. Without waiving such objection, Aragon responds that neither Aragon nor anyone acting on Aragon's behalf made any calls or sent any text messages to Plaintiff that were not covered by the May 12, 2022 settlement agreement and release.

*See* Exhibit 4. During the meet and confer process, the Plaintiff agreed to limit the information sought in response to the records of calls made for Clear Link from May 13, 2022 forward. Other discovery in the case shows that this is about 4 months of calling data because Clear Link terminated its relationship with Aragon Advertising around September of 2022 because of repeated complaints that Clear Link was getting that Aragon Advertising was violating the TCPA when calling on its behalf. *See* Exhibit 5, Deposition of Neil Chipping.

     In a TCPA class action, for the Plaintiff to identify putative class members that may have a claim, he needs to obtain the call records, which will include all the recipients of those calls, at which point an expert analysis can be performed to identify class members. *See Southwell v. Mortg. Investors Corp. of Ohio*, No. C13-1289 MJP, 2014 U.S. Dist. LEXIS 112362, 11-12 (W.D. Wash. Aug. 12, 2014) (denying the plaintiff's motion for class certification in a TCPA case holding, "nor does the submission of Plaintiffs' second expert, Anya Verkhovskaya, assist

the Court in finding that the numerosity prerequisite has been met in this case.  Plaintiffs introduced her testimony purportedly to establish that it was possible to determine … the number of calls made to particular individuals after those individuals registered on the NDCNR or made do-not-call requests.  Ms. Verkhovskaya's declaration is entirely prospective ….  On this basis, her declaration cannot constitute proof of the numerosity element required to establish that Plaintiffs are entitled to prosecute a class action lawsuit.").  As one court summarized when granting a motion to compel for the calling records in a TCPA case:

> This information will assist Plaintiff's experts in determining which phone numbers were tied to cellular phones, which calls were for telemarketing purposes, which numbers were on the National Do Not Call Registry ("NDNCR") and which calls were made using an automatic telephone dialing system ("ATDS"). The information is therefore relevant to the numerosity, commonality, and typicality inquiries the Court will undertake to decide Plaintiff's motion for class certification under Rule 23.

*See Mey v. Frontier Commc'ns Corp.*, No. 13-cv-01191-MPS, ECF No. 102 (D. Conn. Dec. 5, 2014).  Here, like *Mey*, the Plaintiff, or his expert, will determine which calls qualify for membership in the class in order to prepare this case for class certification.

When discovery is not bifurcated, a plaintiff in a TCPA case must have the records of calling activity to prepare for trial to resolve the requeston of liability and damages. As another Court held in a TCPA case while compelling the same data:

> Frey has shown that the outbound call list is relevant to class certification and to the merits of his claim. *See, e.g.*, *Gossett v. CMRE Fin. Servs.*, 142 F.Supp.3d 1083, 1087 (S.D. Cal. 2015) ("This court finds that the outbound call lists are relevant to the class claims and meritorious claims and defenses in this case and overrules [the defendant's] objections to the requests."). The call records can be used to determine which calls were made to cell phone numbers, a fact that is relevant to the numerosity and typicality requirements of Rule 23(a). *See Thrasher v. CMRE Fin. Servs., Inc.*, No. 14-cv-1540, 2015 WL 1138469 at *2 (S.D. Cal. March 13, 2015) ("The court finds that the outbound call list is reasonably calculated to identify the number and recipients of calls made during the class period, which is relevant to Rule 23 requirements."). (*See* Doc. No. 36 at p. 12 (defining the putative class as all individuals to whom Frontier or its vendor made a non-emergency

7

telephone call "to a cellular telephone number or to a number where the recipient is charged for the call").) It is also relevant to the question of liability and damages under the TCPA. *See* 47 U.S.C. § 227(b)(1)(A)(3) (prohibiting calls "using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . ."); *id.* § 227(b)(3)(B) (creating a private right of action to recover "for actual monetary loss" caused by a violation of the TCPA or "to receive $500 in damages for each such violation").

EAG argues that Frey is not entitled to this personal identifying information pre-class certification, but, as discussed below, the Court did not bifurcate the discovery period in this matter. As such, Frey was required to seek discovery on both his individual claim and his class claim at the same time and could not wait until after the Court ruled on his motion for class certification to request this relevant information.

*Frey v. Frontier Utils. Ne. Llc*, No. 19-2372-KSM, 2020 U.S. Dist. LEXIS 260620 *5-6 (E.D. Pa. Apr. 13, 2020). *See also Lopez et al v. New England Fat Loss 2, Inc.*, Civil Action No. 19-cv-11215-NMG, ECF No. 56 (Compelling class wide discovery in a TCPA case holding that "fact discovery, as plaintiffs correctly point out, on the 'merits' of plaintiffs' individual claims and on 'class' certification issues is taking place 'in one [discovery time] period.'…There is no second stage for class certification-related discovery."). In this case, the Court has repeatedly made clear that all discovery for class certification and trial must be conducted now as there is a single discovery period.

### B. If the Motion is not Granted, this Action Should be Transferred to the Middle District of Pennsylvania.

For the reasons explained above, the information sought is straightforward and critical to the prosecution of this case. As such, the motion to compel should be granted. However, if the Court doesn't grant the motion, it should transfer the case to the Pennsylvania Court overseeing the litigation.

Under Fed. R. Civ. P. 45(a)(2), as amended in 2013, all subpoenas are issued "from the court where the action is pending." However, if a motion to compel is necessary,

the motion must be made in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(2)(B)(i). *See also* Fed. R. Civ. P. 37(a)(2) ("A motion for an order to a nonparty must be made in the court where the discovery is or will be taken."). That court (known as the compliance court) may then transfer the motion to the issuing court. Fed. R. Civ. P. 45(f). Indeed, Federal Rule of Civil Procedure 45(f) expressly provides for transfers of subpoena related actions from the compliance court to the issuing court if the compliance court finds exceptional circumstances:

> (f) TRANSFERRING A SUBPOENA-RELATED MOTION. When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances. Then, if the attorney for a person subject to a subpoena is authorized to practice in the court where the motion was made, the attorney may file papers and appear on the motion as an officer of the issuing court. To enforce its order, the issuing court may transfer the order to the court where the motion was made.

The Court in Pennsylvania has multiple orders in the Underlying Action pertaining to discovery and has managed discovery in the case for years, which supports transfer:

> The undersigned finds that transferring Motion to Compel to the Northern District of Georgia pursuant to Rule 45(f) is appropriate. That court is in a much better position to assess the scope of appropriate discovery, whether any burden of responding is undue, and whether Arclin should be required to rely on party discovery prior to seeking documents from Hexion. Judge Michael L. Brown of the Northern District of Georgia has presided over the Georgia litigation for eight months, has already made extensive findings of fact as part of the preliminary injunction proceedings, and has adjudicated previous discovery disputes. *See* N.D. Ga. Case No. 1:20-cv-01197-MLB, ECF No. 44 (minute entry for teleconference regarding issues with discovery and depositions). Moreover, there are multiple additional discovery disputes in this case currently pending before Judge Brown. *See id.*, ECF Nos. 192, 202, 206.) Judicial economy will be best served by having all of these discovery disputes resolved by the same Court. *See also FTC v. A+ Fin. Ctr., LLC,* No. 1:13-MC-50, 2013 U.S. Dist. LEXIS 172472, 2013 WL 6388539, *3 (S.D. Ohio Dec. 6, 2013*) (*finding exceptional circumstances warranting transfer of subpoena-related motions

9

to quash when transferring the matter was in "the interests of judicial economy and avoiding inconsistent results").

*Arclin USA, LLC v. Vits Tech. GmBH,* No. 2:20-mc-48, 2020 U.S. Dist. LEXIS 220745, at *5-7 (S.D. Ohio Nov. 24, 2020).

Given this involvement by the Middle District of Pennsylvania, Mr. Jackson respectfully submits that transfer of this action to Pennsylvania if the motion is not granted will serve judicial economy, comity between federal courts and will lessen the burden on the parties.

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits the motion be granted. Alternatively, he requests that this action be transferred to Pennsylvania.

    Plaintiff,
    By Counsel,

    By: */s/ Anthony Paronich*
    Anthony I. Paronich
    Paronich Law, P.C.
    350 Lincoln Street, Suite 2400
    Hingham, MA 02043
    (617) 485-0018
    anthony@paronichlaw.com